(Decided 18th February, 1881.)

---

STATE, use of JESSE K. HINES, INSURANCE COMMISSIONER *vs.* THE PRESIDENT AND DIRECTORS OF THE INSURANCE COMPANY OF NORTH AMERICA.

*Construction of the Act of* 1878, *ch.* 106, *relating to Insurance Companies—Exemption from Taxation—An Investment in City Stock, a Loan, and not a Purchase.*

An amount of gross premiums received in this State in 1879, by a foreign insurance company, doing business in this State under license, and invested in certificates of indebtedness of the Mayor and City Council of Baltimore, known as Water Stock, with the intention of holding the same for not less than two years, was exempted from taxation by the 31st sec. of the Act of 1878, ch. 106, relating to insurance companies.

The purchase of certificates of Water Stock of the Mayor and City Council of Baltimore, is a loan, within the meaning of the Act of 1878, ch. 106, sec. 31.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, GRASON, MILLER, ALVEY, ROBINSON and IRVING, J.

State, use of Hines, Ins. Comm'r *vs.* Pres. & Dir. Ins. Co. N. America.

*Charles J. M. Gwinn, Attorney-General,* for the appellant.

*Orville Horwitz,* for the appellee.

GRASON, J., delivered the opinion of the Court.

The question presented in this case is, whether the appellee is liable for three per cent. tax on two hundred thousand dollars of its gross premiums received in this State, and invested in two bonds or certificates of the Water Stock of the City of Baltimore.

The case was tried by the Judge of the Court below, without a jury, upon an agreed statement of facts, which is set out in the record, who rendered a judgment in favor of the appellee.   It is admitted that the appellee was duly incorporated by the laws of the State of Pennsylvania; that it transacts business in this State by its authorized agents and that a license for the year 1879 was granted to it by the Insurance Commissioner of Maryland, which expired on the last day of that year, and that it has continued its business from that time in this State under a license.   It is also admitted that the appellee purchased the two bonds or certificates of said water stock, each for one hundred thousand dollars, out of the gross premiums received in this State in the year 1879, with the intention of holding the same for not less than two years, and that said bonds were issued to the appellee by the Mayor and City Council of Baltimore in accordance with the laws of this State, and the ordinances of said city duly enacted. It is further admitted that the tax of three per cent. on said two hundred thousand dollars so invested is due the State unless the amount of the premiums, so invested in said Water Bonds, are exempted from taxation by the provisions of the Act of 1878, chap. 106.   The thirty-first section of said Act imposes a tax of one and one-half per cent. upon the gross premiums of all foreign insurance companies received in this State, less the losses, dividends and

annuities paid in this State during the year; and provides that all premiums loaned in this State for a period not less than two years shall be exempt from such tax, and also from the retaliatory clause of said Act, which is contained in its thirty-sixth section, under which the appellee was liable to a further tax of one and one-half per cent. upon its premiums.

No question is made as to the power of the General Assembly to exempt from taxation the premiums of insurance companies doing business within this State, nor as to the proper exercise of such power, in exempting from taxation all such premiums *loaned* in this State for a period not less than two years, by the passage of the Act of 1878, ch. 106, sec. 31. But the question is, whether the acquisition of the bonds in this case was a *purchase* or a *loan* of its gross premiums received in this State. Notwithstanding that Ordinance No. 5 of 1874 of the Mayor and City Council of Baltimore authorized these bonds to be issued, in addition to any water stock theretofore authorized, and empowered the Commissioners of Finance to *sell or dispose of* them, and that said ordinance was confirmed by the General Assembly by the Act of 1874, ch. 209, we have no doubt that the delivery of the bonds by the proper city authorities and the payment of the money for them by the persons to whom they were issued and delivered constituted a *loan* and not a mere *purchase* of the bonds. The city government was empowered to introduce the water of the Gunpowder River into the city and, in order to raise money to accomplish that object, was authorized to issue and sell its bonds for such amounts as, in its discretion, it might see fit to dispose of them for. In fact this was nothing more nor less than a mode provided for borrowing money with which to do the work. The amount authorized to be thus raised was not to exceed four millions of dollars in addition to any water stock theretofore issued. These bonds, as issued, stated on their face that

they were "Baltimore City Five Per Cent. Water Stock" and were required to be issued for sums not less than one hundred dollars each, and were made redeemable at the pleasure of the Mayor and City Council of Baltimore after the 1st day of July, 1894, and were transferable only at the office of the Register of the city, in person or by attorney, and on surrender of the certificate. When, therefore, the appellee paid to the city authorities two hundred thousand dollars of its premiums and received the two bonds or certificates of stock therefor, that sum was in effect a loan to the city for the repayment of which the bonds or certificates were taken as security. We cannot perceive in what respect such a transaction differs from a loan to an individual upon a bond or a mortgage. The transaction between the parties was the creation of an indebtedness from the city to the appellee to be paid at any time after first day of July, 1894, and this appears upon the face of the certificates. It appears in the statement of facts that the appellee purchased these two certificates of Water Stock in this State, and it must, therefore, be presumed that they were purchased directly from the city, or from some person in this State, to whom they were originally issued; and if they were purchased by the appellee from either the one or the other we are clearly of opinion that they are exempt from taxation by the terms of the Act of 1878.

*Judgment affirmed.*

(Decided 18th February, 1881.)